Prior to 19 October, 1947, the petitioner, Mrs. Alda Proctor, acquired title in fee simple to lands in Marion Township in McDowell County, containing her frame dwelling and a brick store building. On the day stated, the respondent, State Highway and Public Works Commission, entered the land of the petitioner and appropriated a portion of the same to public use as a right of way for a highway. Parts of the residence and store stand on the right of way taken by respondent, and the remainders of these buildings are on the residue of the petitioner's land.
The appropriation was made by respondent without payment of compensation to petitioner, and without bringing any proceeding for condemnation against her. In consequence, the petitioner instituted this proceeding against respondent, alleging that it had taken a portion of her land in the exercise of its power of eminent domain and praying the appointment of commissioners of appraisal to assess the damages sustained by her by reason of the taking. The respondent answered, admitting the appropriation and stating that it did not resist the prayer of the petitioner, and the clerk of the Superior Court made an order appointing commissioners of appraisal.
The commissioners assessed petitioner's damages at $7,150.00, and filed their report accordingly. The petitioner did not challenge this report in any way, but the respondent excepted thereto within the twenty days allowed by G.S. 40-19 upon the ground that the amount of damages awarded by the commissioners was "grossly excessive." The Clerk entered his judgment overruling the respondent's exception and confirming the report of the commissioners. The petitioner did not question the Clerk's judgment in any way. But the respondent excepted thereto, and appealed therefrom to the court at term, demanding "a trial by jury of the issue of fact involved in these exceptions and this appeal."
The proceeding was tried before a jury at term upon the single issue: "What amount is petitioner entitled to recover of respondent?" The jury answered "$7,508.00."
There was neither allegation nor evidence at the trial of any agreement between the parties for the removal of petitioner's frame dwelling and brick store building from the right of way to the residue of the petitioner's land. *Page 690 
All the exceptions are addressed to matters occurring subsequent to the return of the verdict.
Respondent then advanced the proposition that petitioner's recovery could not exceed the amount assessed by the commissioners of appraisal because she had not excepted to the report of such commissioners and had not appealed to the court at term from the judgment of the Clerk confirming such report. In consequence, respondent moved the court to set aside the verdict, and to sign a judgment as tendered by it fixing the petitioner's compensation at $7,150.00. Exceptions were noted by respondent to adverse rulings on these motions.
Respondent further insisted that the petitioner should be required to effect the complete removal of her dwelling and store from the right of way to the residue of her land, and prayed the court to sign a proposed judgment tendered by it providing, in substance, that a portion of the compensation due petitioner, i.e., $4,000.00 or such other amount as the court might specify, should be impounded in the office of the Clerk of the court until the desired removal should be accomplished. The respondent reserved exceptions to the refusal of the court to enter such judgment.
The court thereupon entered judgment awarding the petitioner the amount fixed by the jury, i.e., $7,508.00, as compensation "for the easements of right of way" taken by respondent over the lands of petitioner, and adjudging such recovery included the cost of clearing the right of way of petitioner's residence and store.
The parties took separate appeals from this judgment to this Court. The petitioner assigns as error the incorporation in the judgment of the adjudication that the compensation awarded her embraced the cost of removing the buildings from the right of way, and the respondent assigns as error the rulings of the court set forth above to which it saved exceptions.
Both appeals present this question: In the absence of an agreement so providing, can the State Highway and Public Works Commission require a landowner to remove buildings of a permanent character from the portion of his realty taken for highway purposes to his remaining land?
The State has delegated to the State Highway and Public Works Commission the right to condemn private property for the establishment and maintenance of public highways. G.S. 136-19. When land is appropriated under this power of eminent domain for the right of way for a *Page 691 
road, the general public acquires an easement only in the land so taken, and the fee to the property remains in the landowner, who may subject the land to any use which is not inconsistent with its use for the purpose for which it is taken. But the easement confers upon the State Highway and Public Works Commission complete authority to occupy and use the entire right of way for highway purposes whenever it deems such action conducive to the interests of the public. Hildebrand v. Telegraph Co.,219 N.C. 402, 14 S.E.2d 252. This necessarily implies that the State Highway and Public Works Commission may remove from the right of way any obstructions to the free passage of the traveling public.
It is a fundamental principle in this jurisdiction that the taking of private property for public use imposes upon the condemnor a correlative duty to make just compensation to the owner of the property appropriated. Hildebrand v. Telegraph Co., supra; Sanders v. R.R., 216 N.C. 312,4 S.E.2d 902; Reed v. Highway Commission, 209 N.C. 648,184 S.E. 513; Highway Commission v. Young, 200 N.C. 603, 158 S.E. 91. Such compensation is to be measured by the loss occasioned to the owner by the taking. S. v. Lumber Co., 199 N.C. 199, 154 S.E. 72.
If the State Highway and Public Works Commission and a landowner are unable to agree upon the compensation justly accruing to the latter from the taking of property by the former, the matter is to be determined once for all in a condemnation proceeding instituted by either party under the provisions of Chapter 40 of the General Statutes. G.S. 136-19. Where only a part of a tract of land is appropriated by the State Highway and Public Works Commission for highway purposes, the measure of damages in such proceeding is the difference between the fair market value of the entire tract immediately before the taking and the fair market value of what is left immediately after the taking. The items going to make up this difference embrace compensation for the part taken and compensation for injury to the remaining portion, which is to be offset under the terms of the controlling statute by any general and special benefits resulting to the landowner from the utilization of the property taken for a highway. G.S. 136-19; Highway Commission v. Hartley, 218 N.C. 438, 11 S.E.2d 314.
The answer to the question raised by both appeals is not to be found in any of the statutes relating to the State Highway and Public Works Commission. For this reason, recourse must be had to the general principles of the law of eminent domain for the solution of the problem.
Buildings must be regarded as a part of the real estate upon which they stand. Indeed, they are ordinarily without value or utility apart from such realty. When a public agency or a private enterprise possessing the power of eminent domain cannot acquire land upon which buildings have been erected without resorting to condemnation, it must either *Page 692 
take the land with the buildings thereon or reject it altogether. If it elects to condemn in such case, it takes the buildings with the land, and they must be taken into account in determining the compensation to be awarded the owner in so far as they add to the market value of the land to which they are affixed. The condemnor cannot obviate the necessity for considering the value of the buildings in fixing the owner's compensation by an offer to pay for the land without the buildings coupled with a proposal that the owner remove them from the premises condemned to other land belonging to him. Goldsboro v. Holmes, 180 N.C. 99,104 S.E. 140; Lewis on Eminent Domain (3rd Ed.), section 726; 29 C.J.S., Eminent Domain, section 175; 18 Am. Jur., Eminent Domain, section 253.
The reasons underlying these rules are stated with clarity and vigor by the Court of Civil Appeals of Texas in State v. Miller 92 S.W.2d 1073.
"In the beginning, it should be noted that we are not here concerned with the rights of the parties to arrange for the removal of the improvements from the condemned land by mutual agreement. Those were matters that lay entirely within the discretion of the parties prior to and independent of the judgment of the court; but when the parties exhausted their efforts for an amicable settlement and invoked the aid of the court to adjust their differences, they came into court, not as contracting parties, but as antagonists, standing at arm's length, and each was entitled to stand on his legal rights, and neither could be compelled to make a settlement contrary to established legal principles. The remedy of eminent domain, by which the government through one of its agencies or a quasi-public corporation is authorized to take the property of a private citizen because of the supposed urgent public need, is a harsh one and must be exercised in accord with the strict principles appertaining thereto. Such proceeding is in the nature of an enforced sale in which the agency so appropriating the land stands in the position of a buyer. Consequently, it must either take the land with the permanent improvements thereon as it stands and pay for it accordingly, or reject it in toto. It cannot strip the improvements therefrom and compel the owner to provide other land to receive the salvage, and then rightfully insist that the owner is fully compensated by the payment of the value of the naked land so appropriated. If the rule here contended for is applicable to rural property, it is likewise applicable to urban property. Its general application might often permit the State, a railway corporation, or other agency with authority to condemn land, to move the buildings off of the condemned land onto vacant lots that had been acquired by the owner for use for an entirely different purpose, and in this way the owner's plan for the improvement of his private property, not directly involved in the condemnation proceedings, might be entirely upset. Such a rule would be *Page 693 
intolerable. The law will not sanction such unnecessary meddling with a citizen's rights."
Since there are no exceptions to any matters preceding the return of the verdict, we must indulge in the reasonable presumption that trial was had down to that point in accordance with the principles set out above. Crisp v. Thread Mills, 189 N.C. 89, 126 S.E. 110; Stevens v. R.R.,187 N.C. 528, 122 S.E. 295.
Whether the presence of parts of the dwelling and store on the right of way interfered with the free exercise of the easement condemned was for the determination of the respondent. Whether she should accept the proposal of the respondent that she remove these parts of the buildings from the right of way to her remaining lands at her own expense was for the decision of the petitioner. These things were not concerns of the court. Hence, the court rightly refused to coerce removal by the petitioner by means of a judgment impounding a portion of the recovery. But it transgressed its province in decreeing that the compensation awarded petitioner included the cost of removal of the buildings, and the judgment will be modified so as to eliminate such adjudication.
This brings us to the contention of the respondent that the recovery of the petitioner cannot exceed the award of the commissioners of appraisal, i.e., $7,150.00, because she did not except to their report and appeal to the court at term from the order of the Clerk confirming it, and that by reason thereof the court erred in rendering judgment for the petitioner for the higher damages, i.e., $7,508.00, found by the jury on the trial in term. This position is necessarily predicated upon the assumption that where the question of the amount of compensation justly accruing to a landowner on account of the taking of his property for public use is submitted to a jury of the Superior Court in term upon an appeal in a condemnation proceeding, the verdict of the jury is nugatory if it be favorable to the appellee rather than to the appellant.
We are unable to accept the suggestion of the respondent that it could lessen the award of compensation because it appealed, but that petitioner could not have it increased because she had not done so.
It is true that R.R. v. Church, 104 N.C. 525, 10 S.E. 761, which was handed down in 1889 and which involved the construction of the statute then governing appeals in condemnation proceedings, lends color of support to the respondent's position. Subsequent to the decision in that case, however, Chapter 148 of the Public Laws of 1893 was enacted "to secure the right of trial by jury in certain cases." This statute is now codified as G.S. 40-20 and specifies that any party to a condemnation proceeding "shall be entitled to have the amount of damages assessed by the commissioners or jurors heard and determined upon appeal before a jury *Page 694 
of the superior court in term, if upon the hearing of such appeal a trial by a jury be demanded."
G.S. 40-20 clearly contemplates that the trial of the issue of damages before a jury of the Superior Court at term shall be de novo. Light Co. v. Reeves, 198 N.C. 404, 151 S.E. 871; Ayden v. Lancaster, 195 N.C. 297,142 S.E. 18. By this it is meant that when either party to a condemnation proceeding appeals to the Superior Court in term and demands that the damages be determined by a jury, the trial must proceed in the Superior Court in so far as the question of damages is concerned as though no commissioners of appraisal had ever been appointed. This being true, it necessarily follows that the Superior Court at term is vested with authority to enter judgment for the landowner for the amount of damages fixed by the verdict of the jury, regardless of whether the same be greater or smaller than the sum originally awarded by the commissioners of appraisal, and regardless of whether the landowner or the condemnor took the appeal. Hence, the court below properly rendered judgment in behalf of the petitioner for the larger amount found by the jury.
It is observed, in closing, that the petitioner does not raise any question as to the applicability of G.S. 40-10 to any of the property involved in this proceeding. In consequence, we express no opinion as to that.
Upon petitioner's appeal: Judgment modified and affirmed.
Upon respondent's appeal: No error.